EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT
Assistant U.S. Attorney

MARK E. RECKTENWALD
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: 541-2850

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 2 2002

at_____o'clock and___min____M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR02 00352 DAE |
| | ) | |
| Plaintiff, | ) | INDICTMENT |
| | ) | |
| vs. | ) | [18 U.S.C. § 371; |
| | ) | 18 U.S.C. § 2; |
| GLADYS HINO,            (01) | ) | 31 U.S.C. §§ 5324(a)(3), |
| PAULA PIMENTAL, | ) | 5324(d)(1)] |
| also known as | ) | |
| Paula Estrella,        (02) | ) | |
| | ) | |
| Defendants. | ) | |

INDICTMENT

COUNT 1

The Grand Jury charges that:

I. INTRODUCTION

At all times material to this indictment:

SEALED
BY ORDER OF THE COURT

1.    The "Cayman Islands Investment Program" ("CIIP") purported to offer investors a high rate of return from Cayman Islands banks and government investments. Investors were told that they would receive "interest" of eight (8) percent per week for the use of their money for thirteen (13) weeks. The minimum investment was at least $1,000. Investors were encouraged to invest in cash, and payouts of the "interest" were typically made with cash. Investors were permitted to invest under aliases, and were not required to provide their social security numbers. More than 5,000 people invested in the CIIP. Their investments (in principal and "interest") totaled approximately $67 million.

2.    The program was introduced in Hawaii by Montez Ottley and Paul Lazarro. Lazarro purportedly made the investments in the Cayman Islands on behalf of the CIIP. Ottley supervised the day-to-day affairs of the program, such as collecting money from investors and making the "interest" payments to them, from offices on South King Street in Honolulu, Hawaii. Ottley also operated a travel business named Pacific Travel Systems at that location.

3.    In order to facilitate the collection of investment money and the distribution of "interest" payments, certain individuals were designated as "group leaders." Each group leader was responsible for collecting money and distributing "interest" payments to a specific group of

2

investors.  Group leaders typically received a payment of 1% from
the CIIP for providing this service.

        4.    Defendant GLADYS HINO ("HINO") was a group leader,
who was responsible for more than $1 million in investments.  She
also assisted Ottley in managing the CIIP office.  HINO's duties
including supervising the counting of investment monies that were
received in the office, and turning those monies over to Ottley.
HINO also kept records of the identities of investors and the
details of their investments, and assisted Ottley in
communicating with the group leaders.

        5.    Defendant PAULA PIMENTAL also known as Paula
Estrella ("PIMENTAL") began working for the CIIP as its
accountant in approximately July, 1998.  In that capacity, she
had custody of the checks for the CIIP's checking accounts.
Ottley, who was an authorized signer on the accounts, often
presigned checks and gave them to defendant PIMENTAL, who then
filled out the remaining information on the checks.

        6.    The CIIP utilized accounts at various banks in
Honolulu, including Bank of Hawaii, First Hawaiian Bank, American
Savings Bank, and Amerika Samoa Bank.  These included accounts
that were in the names of "MSO, Inc.," "MSO, Inc., dba Pacific
Travel Systems," "Pacific Travel Systems," and "Eureka
Management."

3

## II. THE CONSPIRACY

7.    From a precise time unknown to Grand Jury but by
no later than in or about March, 1998 and continuing through in
or about October, 1998, in the District of Hawaii, GLADYS HINO
and PAULA PIMENTAL also known as Paula Estrella, Defendants
herein, did knowingly and willfully combine, conspire,
confederate, and agree together and with each other and with
Montez Ottley, and with other persons both known and unknown to
the Grand Jury, to commit a violation against the United States,
that is, to knowingly structure and assist in structuring, and
attempt to structure and assist in structuring, transactions with
domestic financial institutions for the purpose of evading the
currency transaction reporting requirements of Section 5313(a) of
Title 31, United States Code and the regulations promulgated
thereunder, in violation of Title 31, United States Code,
Sections 5324(a)(3) and 5324(d)(1).

## III. WAYS AND MEANS OF THE CONSPIRACY

8.    The manner and means by which this conspiracy was
carried out included the following:

a.    Members of the conspiracy went to banks in
Honolulu and cashed checks in order to obtain cash for use by the
CIIP.  Some members of the conspiracy, including defendant HINO,
received $100 cash from Ottley each time they cashed a check in

4

this manner.  Additionally, Defendant Hino recruited others to join the conspiracy.  The checks were written on accounts maintained at various banks by the CIIP.  The transactions were structured by breaking up cash withdrawals in excess of $10,000 into amounts of $10,000 or less.  By breaking up their cash withdrawals in this fashion, the defendants and their co-conspirators sought to avoid the banks' filing of the currency transaction reports that were required to be filed with the Internal Revenue Service on all currency transactions over $10,000.

   b.   The checks used in this conspiracy included checks that had been presigned by Ottley and given to defendant PIMENTAL, who then filled in the amounts and distributed the checks to members of the conspiracy for cashing.

IV. OVERT ACTS

   9.   In furtherance of the conspiracy and to effect the objects of the conspiracy, Defendants HINO and PIMENTAL, and their co-conspirators, committed diverse overt acts, in the District of Hawaii, among which were the following:

   a.   On or about March 10, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 1181, dated March 10, 1998, in the amount of $9,000.

5

b.   On or about March 13, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 1194, dated March 12, 1998, in the amount of $9,000.

c.   On or about March 17, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 2003, dated March 17, 1998, in the amount of $9,000.

d.   On or about March 20, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 1017, dated March 19, 1998, in the amount of $9,000.

e.   On or about March 25, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 1031, dated March 24, 1998, in the amount of $9,000.

f.   On or about March 26, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed Bank of Hawaii check number 1039, dated March 25, 1998, in the amount of $9,000.

g.   On or about March 31, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and attempted to cash a Bank of Hawaii check in the amount of $9,000.

6

h.   On or about April 2, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed an unnumbered First Hawaiian Bank check, dated March 31, 1998, in the amount of $5,000.

i.   On or about April 23, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed First Hawaiian Bank check number 107, dated April 13, 1998, in the amount of $5,000.

j.   On a precise date unknown to the Grand Jury, but on or after April 14, 1998, defendant HINO went to First Hawaiian Bank in Honolulu, and cashed First Hawaiian Bank check number 110, dated April 14, 1998, in the amount of $5,000.

k.   On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1457, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

l.   On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1458, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

m.   On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave

7

American Savings Bank check number 1459, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

n.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1460, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

o.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1461, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

p.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1454, in the amount of $9,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

q.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1455, in the amount of $9,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

r.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1456, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

s.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1463, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

t.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1466, in the amount of $5,522, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

u.    On a precise date unknown to the Grand Jury, but on or about September 15, 1998, defendant PIMENTAL gave American Savings Bank check number 1385, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

v.    On a precise date unknown to the Grand Jury, but on or about September 14, 1998, defendant PIMENTAL gave American Savings Bank check number 1386, in the amount of $8,000,

to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

      w.    On a precise date unknown to the Grand Jury, but on or about September 14, 1998, defendant PIMENTAL gave American Savings Bank check number 1387, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

      x.    On a precise date unknown to the Grand Jury, but on or about September 14, 1998, defendant PIMENTAL gave American Savings Bank check number 1391, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

      y.    On a precise date unknown to the Grand Jury, but on or about September 14, 1998, defendant PIMENTAL gave American Savings Bank check number 1392, in the amount of $8,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

      z.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1446, in the amount of $9,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

      aa.    On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave

American Savings Bank check number 1448, in the amount of $9,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

bb. On a precise date unknown to the Grand Jury, but on or about September 21, 1998, defendant PIMENTAL gave American Savings Bank check number 1449, in the amount of $9,000, to a co-conspirator so that the co-conspirator could cash or cause the check to be cashed.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-11

The Grand Jury further charges that:

1. Paragraphs 1 through 9 of Count 1 of this Indictment are incorporated herein by reference.

2. On or about the dates set forth below, in the District of Hawaii, defendant GLADYS HINO, for the purpose of evading the reporting requirements of Section 5313(a) of Title 31 United States Code, and the regulations promulgated thereunder, did knowingly structure and assist in structuring, and attempt to structure and assist in structuring, the following transactions with domestic financial institutions, in that she cashed or attempted to cash the following checks, with each transaction

constituting a separate count of this Indictment:

| Count | Check | Date of check | Cashed at | Date Cashed | Amount |
|-------|-------|---------------|-----------|-------------|--------|
| 2 | Bank of Hawaii ("BOH") check 1181 | 3/10/98 | First Hawaiian Bank ("FHB") | 3/10/98 | $9,000 |
| 3 | BOH check 1194 | 3/12/98 | FHB | 3/13/98 | $9,000 |
| 4 | BOH check 2003 | 3/17/98 | FHB | 3/17/98 | $9,000 |
| 5 | BOH check 1017 | 3/19/98 | FHB | 3/20/98 | $9,000 |
| 6 | BOH check 1031 | 3/24/98 | FHB | 3/25/98 | $9,000 |
| 7 | BOH check 1039 | 3/25/98 | FHB | 3/26/98 | $9,000 |
| 8 | BOH check | Unknown | FHB (attempt) | 3/31/98 | $9,000 |
| 9 | FHB check | 3/31/98 | FHB | 4/02/98 | $5,000 |
| 10 | FHB check 107 | 4/13/98 | FHB | 4/23/98 | $5,000 |
| 11 | FHB check 110 | 4/14/98 | FHB | On or after 4/14/98 | $5,000 |

All in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1), and Title 18, United States Code, Section 2.

### COUNTS 12-29

The Grand Jury further charges that:

1.    Paragraphs 1 through 9 of Count 1 of this Indictment are incorporated herein by reference.

2.    On or about the dates set forth below, in the District of Hawaii, defendant PAULA PIMENTAL also known as Paula Estrella, for the purpose of evading the reporting requirements of Section 5313(a) of Title 31 United States Code, and the regulations promulgated thereunder, did knowingly structure and assist in structuring, and attempt to structure and assist in structuring, the following transactions with domestic financial

12

institutions, in that defendant PIMENTAL provided and caused to be provided checks to the below identified individuals so those individuals could cash them, with each transaction constituting a separate count of this Indictment:

| Count | Check | Date of check | Cashed by | Date Cashed | Cashed at | Amount |
|-------|-------|---------------|-----------|-------------|-----------|--------|
| 12 | American Savings Bank ("ASB") check 1457 | 09/21/98 | John Wright | 09/22/98 | ASB | $8,000 |
| 13 | ASB check 1458 | 09/21/98 | John Wright | 09/22/98 | ASB | $8,000 |
| 14 | ASB check 1459 | 09/21/98 | John Wright | 09/22/98 | ASB | $8,000 |
| 15 | ASB check 1460 | 09/21/98 | John Wright | 09/23/98 | ASB | $8,000 |
| 16 | ASB check 1461 | 09/21/98 | John Wright | 09/24/98 | ASB | $8,000 |
| 17 | ASB check 1454 | 09/21/98 | Shyuan Tan | 09/22/98 | ASB | $9,000 |
| 18 | ASB check 1455 | 09/21/98 | Shyuan Tan | 09/22/98 | ASB | $9,000 |
| 19 | ASB check 1456 | 09/21/98 | Shyuan Tan | 09/22/98 | ASB | $8,000 |
| 20 | ASB check 1463 | 09/21/98 | Shyuan Tan | 09/24/98 | ASB | $8,000 |
| 21 | ASB check 1466 | 09/21/99 | Shyuan Tan | 09/24/99 | ASB | $5,522 |
| 22 | ASB check 1385 | 09/15/98 | Shyuan Tan | 09/16/98 | ASB | $8,000 |
| 23 | ASB check 1386 | 09/14/98 | Shyuan Tan | 09/16/98 | ASB | $8,000 |
| 24 | ASB check 1387 | 09/14/99 | Shyuan Tan | 09/15/99 | ASB | $8,000 |
| 25 | ASB check 1391 | 09/14/98 | Curtis Lai | 09/16/98 | ASB | $8,000 |
| 26 | ASB check 1392 | 09/14/98 | Curtis Lai | 09/16/98 | ASB | $8,000 |
| 27 | ASB check 1446 | 09/21/98 | Curtis Lai | 09/21/98 | ASB | $9,000 |
| 28 | ASB check 1448 | 09/21/98 | Curtis Lai | 09/22/98 | ASB | $9,000 |
| 29 | ASB check 1449 | 09/21/98 | Curtis Lai | 09/22/98 | ASB | $9,000 |

All in violation of Title 31, United States Code,

//

//

//

13

Sections 5324(a)(3) and 5324(d)(1), and Title 18, United States

Code, Section 2.

DATED: _Aug 22_, 2002 Honolulu, Hawaii.

A TRUE BILL

FOREPERSON, Grand Jury

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT
Assistant U.S. Attorney

MARK E. RECKTENWALD
Assistant U.S. Attorney

United States v. GLADYS HINO, ET AL.,
CR. No. _____; "INDICTMENT"

14